MOTOR TRANSPORT COMPANY, Appellant, vs. PUBLIC
SERVICE COMMISSION, Respondent.

*September 12—October 10, 1939.*

For the appellant there was a brief by *Arthur M. Sells,* attorney, and *Shaw, Muskat & Paulsen* of counsel, all of Milwaukee, and oral argument by *Mr. Sells* and *Mr. Martin R. Paulsen.*

For the respondent there was a brief by the *Attorney General* and *H. T. Ferguson,* assistant attorney general, and oral argument by *Mr. Ferguson.*

ROSENBERRY, C. J.   If the Public Service Commission on the 24th day of July, 1934, upon the whole record might have entered an order denying the plaintiff operating rights between Port Washington and Milwaukee and intermediate points, it seems clear that the order of the commission made

on rehearing was correctly sustained by the circuit court. (Sec. 196.39, Stats.) This conclusion leads to a consideration of the order of July 24, 1934. The plaintiff had acquired the capital stock of the Sheboygan Transit Company and desired to have a new certificate issued to it authorizing the plaintiff to conduct the transportation business theretofore conducted by the Sheboygan Transit Company. On December 7, 1933, pursuant to the application of the plaintiff, the Public Service Commission issued to the plaintiff Common Carrier Certificate No. CC–130 but with the following restriction:

"No intermediate service between Sheboygan and Milwaukee."

Under date of February 22, 1934, the plaintiff filed with the Public Service Commission an application for a hearing—

"so that our rights will be clearly defined and also so that we will know how to apply our tariff between all points served by this company and Port Washington."

Pursuant to that application a hearing was had upon which the commission filed an opinion which was in part as follows:

"At the time of hearing it was attempted to show the intention of the predecessor companies with relation to the operation into Port Washington. The commission ruled in that connection that testimony could not be received to show the intention of the predecessor company operations but that the determination of the matter, as stated above, must be based upon the records of the commission. The Motor Transport Company and the Port Washington Truck Lines have submitted briefs in lieu of additional testimony and oral argument and it appears from examination and study of the commission records that the applicant in this matter does have operating rights into Port Washington.

"The Port Washington Truck Line sets forth that such an operation was never contemplated by the predecessor companies of Motor Transport Company. It appears, however, that Certificate BC–145 included therein the operation into Port Washington. It further appears that on January 29,

1930, the then holder of Certificate BC–145 desired to assign said operations to the Sheboygan Transit Company, a corporation organized to take over the operations as conducted under BC–145. At the time of the hearing, which was held at Sheboygan on February 21, 1930, the then holder of Certificate BC–145 testified that he was operating for one firm in Port Washington, and that he did have the authority to so operate. The representative of the Port Washington Truck Line stated that as long as the operations did not contèmplate service into Port Washington any objection he might have could be waived. However, this same representative heard the testimony concerning the Port Washington operation and acquiesced when questioned concerning it. The commission on March 8, 1934, entered an order authorizing transportation 'between Sheboygan and Milwaukee on Highway 141 and County Trunk B into Port Washington Road.' The exhibit, however, did not set forth Port Washington as a termini, and merely set forth Sheboygan and Milwaukee.

"The commission is of the opinion that the determination of operating rights of the Motor Transport Company is conditioned upon this commission's interpretation of Certificate BC–413 of the Sheboygan Transit Company for surely Certificate BC–145 authorized said transportation, and any doubt that may arise as to the operating rights would naturally arise by reason of the omission of Port Washington from the operating schedule in Certificate BC–413. The commission's determination must be based upon its interpretation of the language used in Certificate BC–413 'between Sheboygan and Milwaukee on Highway 141 and County Trunk B into Port Washington Road,' and in this connection this commission agrees with the contentions set forth in the applicant's brief that 'the term "between Sheboygan and Milwaukee" is restrictive only to the length of the operation, and does not restrict such operation to Sheboygan and Milwaukee.'

"The commission in many instances in specifically authorizing operations set forth transportation between two municipalities serving all intermediate points. However, in the absence of the statement that all intermediate points are to be served, this commission restates that the correct interpretation of the certificate as herein questioned, authorizes trans-

portation to all intermediate municipalities unless otherwise specifically excepted.

"The commission finds that the Motor Transport Company, the successor to Rudolph Grandlic and the Sheboygan Transit Company, operating under Certificates BC–145 and BC–413, respectively, is by virtue of its succession of operating rights entitled to serve Port Washington."

Upon the basis of the opinion on July 24, 1934, the commission made the following order:

"It is therefore ordered that Certificate CC–130 be amended in the manner and to the extent hereinbefore outlined."

The Port Washington Truck Line being interested in the controversy filed a motion for a rehearing, and a rehearing was had on August 23, 1934. Upon the rehearing one Rudolph Grandlic appeared. On the original hearing he had testified as follows:

"*Q.* You propose to operate between Sheboygan and Milwaukee the route as set out as the route between Sheboygan and Milwaukee on highway 141 County Trunk B into the Port Washington road. Does that mean you propose to serve Port Washington? *A.* I have been serving out of Sheboygan. I have *the* authority to stop at Port Washington from Milwaukee. There is a man running between the Port and Milwaukee."

Upon the rehearing, he testified that the word "the" was supposed to be "no," and that he had no authority between Port Washington and Milwaukee. On the original hearing he had also testified as follows:

"*Q.* At the present time you are carrying freight from Milwaukee to Port Washington? *A.* For one firm, National."

On the rehearing he testified:

"They asked me, 'At the present time you are carrying freight from Sheboygan to Port Washington?' I said, 'For one firm, the National Box & Specialty Company.'"

The word "National" refers to the National Box & Specialty Company located at Sheboygan.

There was other testimony with respect to these corrections, and testimony to the effect that the predecessor of the plaintiff had not carried freight between Milwaukee and Port Washington.

Upon the rehearing the commission filed an opinion in the course of which the commission said:

"The original opinion of the commission was based upon a construction of the applicant's certificate in the light of the authority which had been granted to previous certificate holders whose operations had been acquired by the applicant. This authority evidenced by their certificates was construed from the certificates themselves, which in turn were interpreted in the light of the applications therefor, the testimony introduced in support of such applications, and the practical construction of the certificates which had been placed upon them by the parties and the commission in filing tariffs naming rates, and in the service which the operators had rendered and offered to the public thereunder.

"At the instant hearing, evidence was produced with respect to certain errors alleged to have been made in transcribing the evidence of the previous hearings, and explanatory of the tariffs which had been filed and accepted by the commission pursuant to the various certificates."

After discussing the admissibility of the evidence, the commission continued:

"The testimony referred to in this case was taken on February 21, 1930, and it cannot be doubted that under ordinary circumstances the reporter's notes would bear vastly more weight than oral testimony as to what was then said. Here, however, the corrections, while they change the entire import of the testimony then taken with reference to the question now involved, are of errors which may have easily been made in transcribing, and the corrections produce logical statements upon which the parties at the hearing obviously relied. This cannot be said of the testimony as originally transcribed. The commission is convinced that the testi-

mony was actually given or intended be given as was testified to at this hearing.

"The testimony with reference to the filing of tariffs and conferences between the draftsman of the tariffs and the owners of the line, is relevant because bearing upon the practical construction of the certificate adopted by the parties. The rates and tariffs themselves were used for the same purpose.

"The entire record as now made is clear and convincing that there never was any intention on the part of the commission or of the parties in the applications for, and the issuance of the certificates, to the applicant's predecessors, to grant the right to serve Port Washington to or from Milwaukee. . . .

"The commission is of the opinion and so holds in the light of the testimony given at the last hearing, that its previous decision and order were erroneous and should be reversed."

An order was entered accordingly on September 24, 1934, which is the order sought to be set aside in this proceeding.

Despite the statement of the commission in its opinion which preceded the issuance of its order of July 24, 1934, that plaintiff's operating rights were conditioned upon the commission's interpretation of Certificate BC–413 of the Sheboygan Transit Company, upon consideration of the whole record we are convinced that had all the evidence offered on the hearing and the rehearing been before the commission and considered by it as a basis for the issuance of an order on July 24, 1934, it might properly have denied the plaintiff operating rights between Port Washington and Milwaukee. The fact that the correction was made long after the giving of the testimony goes to the weight rather than to the materiality of the evidence and was therefore a question for the commission. The decision being based upon interpretation of the prior orders upon which the rights of the plaintiff company depended, it cannot be said that the conclusion reached by the commission is unlawful. There is no claim made that it is unreasonable.

If the commission upon the application of the plaintiff had jurisdiction on hearing to strike out the restriction contained in the order of December 7, 1933, it certainly had jurisdiction to reinsert it on rehearing. The contention that the order of September 24, 1934, was made without proper notice to the plaintiff is without merit.

*By the Court.*—Judgment affirmed.